SWEET and others *vs.* JACOCKS and others.

Where a feme covert, after having two children by her husband, abandoned him and lived in adultery with J., during which time she had eight other children supposed to be the children of J., and then died, after which time her father died intestate leaving a large real and personal estate, the whole of which was claimed by the two first children, and a part of which was also claimed by J., acting in behalf of the eight younger children; and thereupon a compromise was effected, in consequence of which the two first children released eight tenths of the property to J., for the benefit of the others, but the conveyance on its face was absolute to J., who never gave any declaration of trust; and afterwards the estate was partitioned and eight tenths thereof set off to J.; *Held*, that the beneficial interest in that portion of the property which was released to J. belonged to the eight younger children, and that J., could not set up their illegitimacy as a defence to their claim; and that the legal liens of judgment creditors of J. upon the property could not prevail against the equitable claim of such children.

Where a person undertakes to act for another, he is not allowed to deal in the subject matter of such agency on his own account and for his own benefit. And if such agent takes a conveyance in his own name of an estate which he undertook to obtain for another, he will in equity be considered as holding the estate in trust for his principal for whom he undertook to act as agent in the purchase.

Where a fund is in court, arising from the surplus monies in a foreclosure suit, or is in the hands of the officers of the court, it is a matter of discretion with the court to direct a bill to be filed to ascertain the rights of conflicting claimants, or to settle their rights upon a reference to a master. And a claimant who has obtained a reference to ascertain his right to such surplus cannot afterwards object to the claims of other persons, as improper to be settled on a reference without a bill filed by them.

A judgment obtained against the owner of an equity of redemption in mortgaged premises, after a decree of foreclosure but before a sale of the premises by the master, has an equitable lien upon the surplus monies produced by the sale under the decree. *Aliter*, if the judgment was docketed subsequent to the sale.

THIS was an appeal from a decretal order of the vice chancellor of the second circuit, relative to the surplus proceeds of mortgaged premises sold under a decree in this cause. The mortgaged premises, with other real estate, belonged to John Cornell, who died in February, 1817, intestate; upon which event, one fifth of his real property and a portion of his personal estate passed to the legitimate children of his daughter Sarah Montfort, then deceased.

March 21.

Mrs. Montfort had two children while she continued to reside with her husband; Phebe, the wife of C. Peckham, and Peter Montfort. She afterwards lived in adultery with the defendant, Francis Jacocks; and while she was so living with him, during the life of her husband, she had eight other children, who were the respondents in this appeal and the claimants of the surplus proceeds of the mortgaged premises, in opposition to the claims of Jacocks and his creditors. After the death of Cornell, the two eldest children of Mrs. Montfort attempted to make partition of his property; claiming the entire one fifth of the real and personal estate. Jacocks, in behalf of the other children, employed counsel to resist that claim, insisting that the other children were entitled to share equally with them in that one fifth of the estate; such other children being then all infants. A compromise was finally made, by which the two eldest children released to Jacocks eight tenths of the share of their mother in the real and personal estate, and the property was afterwards divided accordingly—Jacocks taking the conveyance in his own name. In the partition of the real estate, the premises sold under the decree in this cause, together with other lots which he had subsequently sold, were set off to Jacocks. And after the partition Jacocks gave to Van Cott the mortgage which was foreclosed in this cause. J. Rymph had a judgment against Jacocks, and was made a party to the bill of foreclosure. S. Cleveland recovered a judgment against Jacocks after the decree of foreclosure, but whether before or after the sale of the premises by the master, it did not appear. The surplus proceeds of the mortgaged premises were between fifteen and sixteen hundred dollars. And upon a reference to the master to ascertain the rights and priorities of the several claimants of this surplus, the master rejected the claim of the eight children of Mrs. Montfort to any part of the same, and decided that the judgments of Rymph and Cleveland were to be first paid, and that F. Jacocks was entitled to the residue. Upon exceptions to the master's report, the vice chancellor decided that F. Jacocks was only entitled in equity to a life estate in the real and personal property released and conveyed to

him by the two eldest children of Mrs. Montfort, for the benefit of the other children, and that such other children were entitled to the remainder in equal portions. He also decided that the judgment creditors of F. Jacocks were not entitled to any greater interest in the fund, as against the equitable rights of the children, than Jacocks himself had; and a reference was directed to a master to state the account between Jacocks and the children, so as to ascertain the rights of the several parties in the surplus upon these principles. From this decision of the vice chancellor, F. Jacocks and Cleveland appealed.

The following opinion was given by the vice chancellor upon the making of the decretal order appealed from:

C. H. RUGGLES, V. C. The land which produced the fund in question was conveyed by Peckham and wife and P. Montfort to F. Jacocks by a release in fee, absolute, without any express trust; and the grantee has never given any declaration of the trust in writing. He cannot therefore be charged as trustee unless by reason of some fraud practiced in obtaining the conveyance. But the circumstances under which the release was obtained by him are such as make him chargeable with a fraud, and to render him liable to account as a trustee, notwithstanding the statute of frauds which requires all declarations of trusts to be in writing. It is clear that Jacocks had not the least shadow of a legal claim to any part of the real or personal estate of John Cornell, deceased. There was no pretence that he was the husband of Sarah Montfort, and the circumstances under which he had lived with her were certainly not calculated to inspire those who were lawfully entitled to that estate with any feelings of regard or affection for him. And yet it is found that the deed from Peckham and wife and Peter Montfort conveyed to him a large interest in three valuable parcels of land. One of them, the mortgaged premises, sold for $4000, and another he sold for $585. There is no proof in relation to the value of the Fishkill farm. Jacocks estimated the personal property which he obtained at $1500, according to

the testimony of Mrs. Williams. It is plain, therefore, that by some means and on some pretence, he has had of the estate a sum which exceeds $6000, and is probably much greater, and for which he has paid not more than $100, and it is doubtful whether he has paid more than one dollar. It is most extraordinary that property to this amount should have been conveyed to him without liability to account for it to some one, and without consideration paid somewhere. So, however, it is claimed by Francis Jacocks.

The eight younger children of Sarah Montfort are regarded as illegitimate, and as the offspring in fact of F. Jacocks, whose name they bear. But it is to be remembered that they were born during the lifetime of Montfort, the husband of their mother, who may notwithstanding any evidence in this case have had access to his wife during the whole period of her cohabitation with Jacocks. There was therefore no slight ground for a claim on their part to an interest in the estate of John Cornell. Their claim was asserted by Jacocks, and it was most clearly the basis of the compromise between Peckham and Montfort on the one side and Jacocks on the other, upon which compromise the deed of the 17th June, 1818, was given. The children in whose behalf Jacocks professed to act were infants for whom, notwithstanding the circumstances of their birth, Peckham and wife and Peter Montfort felt a regard as the children of their mother; and Jacocks, whilst in treaty for the conveyance, made the strongest expressions of affection and kindness for them as his own offspring, alleging that he would be as unwilling to wrong them as any other parent would his children. He made no definite and distinct claim of right for himself, though he said that he wanted a living out of the property. But he declared his intention that the children should have it after his death; or in his own words, " after he had done with it." It was further stated also, that the children being minors, the taking the deed in his name would facilitate the proceedings in partition and the settlement of the estate which was desirable to Peckham and wife, who lived in one of the western counties. It was moreover stated to Peckham that Jacocks, acting for the

benefit of the children as well as himself, would be equitably accountable to them for their interest in the property.

The conduct of Jacocks was corrupt and fraudulent in betraying the trust which he assumed, of acting as the agent and protector of his children in enforcing and settling their claim to an interest in the land. Under the circumstances which exist in this case, the taking the deed in his own name was in itself a fraud. He cannot be permitted now to say that the children being illegitimate had no title and have therefore lost nothing by his means. Their alleged rights were the foundation of the arrangement by which he has received $6000. Their claims were the consideration in fact on which the deed was executed. If he had not undertaken to arrange and conduct their business, some other friend might have done so, and have brought the negotiation to a successful and beneficial result. The agent for infant children cannot be permitted to take to himself the entire property acquired by his agency without liability to account for it. It is one of the most familiar principles of equity that no one shall take advantage of a fiduciary relation between himself and another to make gain to himself. Although Jacocks was the self-constituted agent of his children in the compromise between Peckham and Montfort, this principle is not the less applicable to his case. When he assumed the agency he assumed its duties and responsibilities. The children chose to affirm the authority on which he professed to act ; and he will not be allowed now to deny it. A trustee is not permitted to purchase trust property. (*Jeremy's Eq. Jur.* 393, 4.) An agent cannot become the purchaser indirectly of property entrusted to him to sell. (*Lowthn* v. *Lowthn,* 13 *Vesey,* 95. *Whitcomb* v. *Minchn,* 5 *Maddock,* 91. *Woodhouse* v. *Meredith,* 1 *Jac. & Walk.* 204.) Much less can an agent dealing in behalf of his principal, professing to settle and compromise a claim in behalf of such principal take the entire fruits of the negotiation to his own use. And yet, in order to resist the claim now made by the children of Jacocks, it seems to be necessary that he should support the affirmative of the proposition to its full extent. If the claim of the children

was in fact the substantial basis and inducement which led to the grant by Peckham and Montfort, (and of that there is no doubt,) it seems to be immaterial to inquire whether they intended the deed for the benefit of the children or of Jacocks. The latter intention would only make them parties to the fraud without relieving Jacocks from the imputation or the responsibility. But the evidence plainly shews that Jacocks endeavored to impress them with a belief that the conveyance was to be for the benefit of the children; and they were made to understand that Jacocks, acting for the children, would be accountable in equity to them, although the deed was drawn to him. Peckham and Montfort were therefore innocent of any intended fraud. This claim of the children, although it is not strictly and technically a resulting trust, has in it the substantial equity of such a trust, because the supposed title of the children was substantially the consideration of the release of 1818 by Peckham and Montfort to Jacocks.

There are other grounds on which Francis Jacocks would be liable to account to the claimants in this case, but it is not necessary to point them out. The only doubt in my mind is, whether F. Jacocks is entitled to any beneficial interest whatever under the deed of 1818. Inasmuch, however, as there is evidence of the intention of Peckam and Montfort that he should have a life estate in the premises, and the claimants themselves appear to think the arrangement proposed in the draft of the trust deed made in 1820 to be reasonable and just, I take that substantially as the basis of the disposition of the fund in question. And the judgments against Jacocks are liens only on his interest in the land, and not on the equitable interest of the children. (1 *Paige's Rep.* 130, 280. 2 *John. Rep.* 267.)

*S. Cleaveland,* for the appellants. The rule of court under which these proceedings are instituted contemplates legal liens and interests, such as are consistent with the title and estate set forth in the bill of foreclosure, not equitable interests, or such as are adverse to the title under which such proceedings of foreclosure were had. If the

children of Jacocks claim the surplus monies by adverse title, alleging fraud, &c. their remedy should be by bill. No trust ever existed ; if any did exist, it being by parol, it is void unless it be a resulting trust, which it is not. The trust attempted to be set up is so vague and uncertain that a court could not decree its execution ; hence it is void for that reason. No legal rights of the Jacocks' children have been impaired or affected, either by the purchase of Jacocks or sale under the decree ; if any ever existed, they can be enforced against the occupants of the land of which John Cornell died seized. The infants are not legal-ly before the court, and are not bound by any decree that has been or can be made in the cause ; hence the decree is in regard to them erroneous.

*J. Brush,* for the respondents. From the facts in the case, the eight children who are the claimants are to be presumed to be the lawful children of Sarah Montfort, the daughter of John Cornell, deceased, and entitled to eight tenths of one fifth of his property. (1 *Bac. Abr.* 512.) If the claim of heirship of the eight children to the estate of John Cornell, deceased, was even doubtful, the fair and bona fide settle-ment of that claim is a sufficient consideration for a settle-ment, and is binding upon the parties if the infants choose to have it binding. The claim of the eight children was the only consideration for the conveyance given to J. Jacocks upon such settlement, he not having the least shadow or pretence of a claim on his part. The evidence shows what that settlement was and that it was made for the benefit of the children. The settlement created a trust estate for the benefit of the eight children, whether Francis Jacocks was either honest or dishonest in the inducement he held out to obtain the deed. (1 *Paige's Rep.* 147.) Francis Jacocks has wasted more than the value of his life estate, so that all that remains belongs to the eight children. The judgment cred-itors have a lien only upon the right of Francis Jacocks, none upon the equity of others. (1 *Paige's Rep.* 130 *and* 280. 2 *id.* 267.) Proceedings by petition to obtain the

surplus was the proper course for the children. (1 *Paige's Rep.* 181.)

THE CHANCELLOR. If the judgment of Cleveland was docketed before the sale by the master, it was an equitable lien upon so much of the surplus monies as F. Jacocks was entitled to, although the judgment was obtained after the decree of foreclosure ; as the court would stay the sale upon the application of a creditor having such a judgment lien, on his paying the mortgage money and costs, and the claims of all others who had prior legal or equitable liens or interests in the mortgaged premises. But if his judgment was recovered after the property was struck off to the purchaser, by the master, he never had any legal or equitable lien upon this fund or upon the premises which produced it ; and being a mere creditor at large of Jacocks, he would have no right to interfere in this controversy until he had exhausted his remedy at law against Jacocks. (*Douglass* v. *Huston*, 6 *Ham. Ohio Rep.* 162.) The conclusion at which I have arrived on other points in this case, however, renders it unnecessary for me to consider the question whether Cleveland has shown such a lien upon the fund as to authorize him to join with Jacocks in the appeal. It is also wholly immaterial to the rights of the respondents, for if they have no claims upon the fund, it is of no consequence whatever to them how it is disposed of as between Jacocks and his creditor. And if they have any equitable claims as against him, the law is now perfectly well settled that the legal liens of his judgment creditors, whether the judgments were recovered before or after the decree, cannot in this court be permitted to prevail against the prior equitable claims of the respondents upon this specific fund. (*White* v. *Carpenter*, 1 *Paige's Rep.* 217. 1 *Story's Eq.* 398, *n.* 1. *Arnold* v. *Patrick, ante, p.* 310.)

From the undisputed facts in this case it appears that F. Jacocks had no pretence of claim on his own account to any part of the real or personal estate of Cornell. Even if he had been the husband of Mrs. Montfort, instead of holding towards her the relation which he did, the whole of her

share of the property would have belonged to her children exclusively, as she died in the lifetime of her father. And the evidence clearly shows that Jacocks made the claim to the property and assumed to act as the voluntary guardian or protector of the rights of the infant children in resisting the claims of the two adult children to the whole, and in making the compromise by which eight tenths of the share was conveyed to him. No one who adverts to the circumstances under which the conveyance to him was made, can believe that he could have obtained the same except in his assumed character of protector of the rights of the infant children, and under a belief on the part of the grantors that their natural brothers and sisters were to have a beneficial interest in the property thus conveyed. Although Mrs. Montfort was living in adultery with Jacocks at the time of the birth of the eight younger children, it does not appear that the real husband did not have access to her so that he might have been the father. Upon the maxim, *pater est quem nuptia demonstrat*, therefore, this claim to part of the property in behalf of the infants was not entirely without foundation. And the person who has assumed to act for them, and who has actually obtained the property under a conveyance intended for their benefit, cannot now be permitted to insist that they had no interest in that property and that he holds it discharged of the trust.

It may even be admitted for the purpose of deciding this controversy, and the other joint owners have acted upon such presumption in the subsequent partition of the estate, that the whole legal title to the one fifth was in the two eldest children previous to their conveyance, but that they voluntarily relinquished a portion of their legal rights to Jacocks for the benefit of these younger children of their mother, to settle a family dispute the litigation of which must necessarily bring disgrace upon her memory. Even then I am not aware of any principle of law or equity, and certainly there is nothing in the code of good morals, which could authorize the paramour, under such circumstances, to claim the whole benefit of this conveyance, which was not intended for his use but for the use of the infant offspring

CASES IN CHANCERY.

of his guilt and infamy. It is a settled principle of equity that where a person undertakes to act as an agent for another he cannot be permitted to deal in the matter of that agency upon his own account and for his own benefit. And if he takes a conveyance in his own name of an estate which he undertakes to obtain for another, he will in equity be considered as holding it in trust for his principal. (*Parkist* v. *Alexander*, 1 *John. Ch. Rep.* 394. *Lees* v. *Nuttall, Taml. Rep.* 282. 2 *Mylne & Keen*, 819, *S. C.*) More especially, in a case where he assumes to act as the agent and protector of the rights of infants and in that character obtains a conveyance in his own name which was intended for their benefit, will he be considered as holding the legal title in trust for them. In this case, therefore, Jacocks took the property in the character of trustee for the eight minors in whose behalf he made the claim. And he has no equitable right to the rents and profits or proceeds of any part of the property, except his claim for the sums actually expended by him in securing the title, and such sums as he may have expended for the support of the respondents respectively beyond the value of their services.

The only error of the vice chancellor, therefore, was in making a decretal order which was too favorable to the appellants, by giving to Jacocks the benefit of a life estate in the property to which he was not entitled. But as the surplus proceeds of the mortgaged premises are the only matters now in controversy, the taking of this account being for the sole purpose of ascertaining the right to this fund and apportioning it properly among the respondents according to the amounts which are due to them respectively from Jacocks, which amounts are now an equitable lien on this only remaining fund, the respondents will not probably be eventually prejudiced by the error of permitting him to have the benefit of a life estate in the property conveyed to him by the two elder children. There is certainly nothing in the decretal order of the vice chancellor of which these appellants had any right to complain.

As the fund was in court, and Jacocks elected to proceed on a reference to a master, under the rule, for the purpose

of settling the rights of the several claimants to the surplus, it does not lie with him to object that this was not a proper mode of settling the controversy between him and the respondents, and that there should have been a more formal proceeding by bill, in which all other matters in controversy might have been finally disposed of between the parties. A claim having been made upon the fund in court, neither party could be permitted to take it out, without giving security to refund, until the right to the same was settled in some manner. And if he was not willing to have the rights of the respective parties ascertained in this manner, he should, instead of asking for a reference, have himself filed a bill, or have asked to be permitted to take the fund out of court upon giving security to refund the same with interest and costs if the other claimants should succeed in establishing an equitable right to the same. And Cleveland, who was not a party to the suit, certainly stands in no better situation than the other claimants in this respect, as he comes in under the order of reference merely. In this stage of the proceedings none of the parties were in a situation to make any such objection, even if it would have been valid at an earlier period of the investigation. But there is, in fact, no ground whatever for the objection. This summary mode of adjusting conflicting claims to the surplus proceeds of mortgaged premises was adopted for the purpose of saving the costs of a multiplicity of suits, and of useless litigation. And where the fund is in court or in the hands of its officers, it is a matter of discretion merely, whether the court will direct a bill to be filed to ascertain the rights of different claimants, or refer it to a master and authorize them to litigate their claims before him, with the privilege of an appeal to the court itself, if any of the parties are dissatisfied with his decision.

The decretal order appealed from is affirmed with costs.