### STERRICKER and wife *vs.* DICKINSON.

A testatrix, by her will, devised her real estate to the defendant, in trust for and to the use of the infant children of the testatrix, their and each of their heirs and assigns forever, to be held for the benefit, and used and expended for the support, maintenance and education of such children and every of them.   *Held*, that this devise was void as an express trust, but was valid as a power in trust.   That the legal title vested in the trustee only during the minority of the infants, and that the estate of the trustee ceased, as to each cestui que trust, upon his or her arriving at the age of twenty-one years, and marriage.

*Held also*, that if any interest existed in the testatrix, undisposed of, either in remainder or reversion, the same, upon her decease, became united to the beneficial estate of the children of the testatrix, as heirs at law, who then became seised of the same in fee.

And the defendant having purchased the interests of all the children, except the plaintiff, in the real estate, *held*, further, that the latter could maintain a bill in equity, against him, for an account and for a partition.

THIS was a suit in equity, commenced before the code.   Referred by stipulation, dated November 30, 1848, to Thomas B. Mitchell, Esq. to take the testimony and state the account between the parties under the pleadings, and report to the court. The referee reported that there was due the plaintiff $200, and that the plaintiff was entitled to one-fifth of a certain farm, which the referee valued at $6325.   At the special term in Otsego, in July, 1850,

*H. Lathrop*, for the plaintiff, moved to confirm the report.

*J. D. Hammond* and *L. J. Walworth*, on the part of the defendant, moved to set the report aside.

MONSON, J.   Mary Sutphen derived title to the property in question from her husband, Matthew L. Sutphen, by his will, dated the 28th of January, 1827.   On the 26th of April, 1830, she executed her last will and testament, which contained the following clauses: "I give and devise unto my brother Martin

Dickinson, all the right, title and interest which I now have under and by virtue of the last will and testament of Matthew L. Sutphen, my late husband, deceased, or otherwise, of in and to that certain farm or lot of land situate, lying and being in the town of Cherry Valley, aforesaid, and in the possession and occupation of Isaac Keeling, and being the farm formerly owned by my said husband, Matthew L. Sutphen deceased; to have and to hold the same, unto the said Martin Dickinson, in trust, for my five infant children, Marion Sutphen, Albert Sutphen, Margaret H. Sutphen, James Sutphen and Matthew Sutphen, their and each of their heirs and assigns forever. I also give, devise and bequeath unto my said brother, Martin Dickinson, all the lands, tenements, real estate and chattels real, of which I may die seised, wheresoever the same may be situate; and also all and singular my goods, chattels and personal property, and all debts, dues, claims and demands, either in law or equity, which I have against any person or persons whatsoever, to have and to hold the same and every part thereof unto the said Martin Dickinson, in trust, for and to the use of my said infant children above named; it being my will, true intent and meaning, that all the property, real and personal, of which I shall die seised, and which shall belong to me at the time of my death, shall be held for the benefit and used and expended for the support, maintenance and education of my said infant children above named and every of them. Secondly. I do hereby recommend to my said brother, Martin Dickinson, the care and guardianship of my said children, Marion, Albert, Margaret, and James and Matthew, during their infancy, and as far as I am empowered by law, I do hereby appoint him the guardian of my said children, during their infancy. Lastly. I do hereby appoint my said brother, Martin Dickinson, sole executor of this my last will and testament."

By the system of trusts established by the revised statutes, "every disposition of lands, whether by deed or devise, shall be directly to the person in whom the right to the possession and profits shall be intended to be invested, and not to any other, to the use of or in trust for said person; and if made to one or

Sterricker v. Dickinson.

more persons, to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee. (1 *R. S.* 728, § 49.) By the fifty-fifth section, express trusts may be created, 1. To sell lands for the benefit of creditors; 2. To sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon, and to receive the rents and profits of lands and apply them to the *education and support, or either*, of any person during the life of such person, or for any shorter term. By the act of 1830, (*Laws of* 1830, *p.* 386,) the word "*use*" is substituted for the words "education and support, or either."

It is plain, and indeed it is conceded by the counsel for the plaintiff, that the declaration in trust in the will of Mary Sutphen is void as an express trust under the 49th section. It does not come within the first subdivision of the 55th section. Nor literally within the second subdivision; nor within the third subdivision, viz. to receive the rents and profits of lands and apply them to the education and support, or either, of any person, &c. or to the use of any person, as amended by the act of 1830, or to receive the rents and profits of land and pay them over to the beneficiary, which has been decided by the court of appeals as coming within this last subdivision, and as being therefore valid. (2 *Comst.* 297.) But it is an estate to "be held for the benefit, and to be used and expended for the support, maintenance and education of her infant children," which would seem to imply the power to sell, mortgage and lease the lands for those objects. For "*Quando aliquid conceditur, conceditur id sine quo illud fieri non possit,*" ( *Willes,* 197, 1 *Saund.* 323,) thus combining the power expressed in the second subdivision to carry out the objects contemplated in the third subdivision. But whether the clauses in this will create an express trust within the 55th section, seems to be an inquiry more curious than useful, so far as this case is concerned; for by the 58th section it is provided that where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees; but the trust, if directing or authorizing the performance of any act which may be lawfully

performed under a power, shall be valid as a power in trust. (1 *R. S.* 729. 5 *Barb. S. C. Rep.* 58.) This provision reani- mates a class of trusts, under a new name. (4 *Kent*, 313.) The whole estate in law and equity is vested in the trustee, subject only to the execution of the trust; and if an express trust be created for any other purpose than those enumerated in the 55th section, no estate vests in the trustee; though if the trust authorizes the performance of any act lawful under a power, it becomes valid as a power in trust. (4 *Kent*, 310.) The trust attempted to be created by Mary Sutphen for the support, main- tenance and education of her infant children, was certainly not unlawful in itself, but quite meritorious. The intention of the testator, when it shall have been ascertained from an examina- tion of the will in connection with the situation of his property &c. at the time of making such will, must be carried into effect by the courts, so far as that intention is consistent with the rules of law. Although some of the objects for which a trust is cre- ated, or some future interest limited upon the trust estate, are illegal and invalid, if any of the purposes for which the trust was created are legal and valid and would have authorized the crea- tion of such an estate, the legal title vests in the trustees during the continuance of such valid objects of the trust. (9 *Paige*, 528, *Eckford's will.*) Trustees take that quantity of interest only which the purposes of the trust require and the instrument creating it permits. The legal estate is in them so long as the execution of the trust requires it, and no longer, and then it vests in the person beneficially interested. (4 *Kent*, 310, *note a.*)

A power in trust is a mere authority or right to limit a use, while an estate in trust is an estate or interest in the subject. A trustee is always invested with the legal estate, but this is not necessary with respect to the donee of the power. In the case of a power in trust there is always a person other than the donee or grantee of the power, which person is called the ap- pointee, answering to the cestui que trust in a simple trust. (5 *Barb. S. C. Rep.* 652.) Every estate and interest not embraced in an express trust, and not otherwise disposed of,

remains in or reverts to the person who created the trust. (4 *Kent,* 310.)

By the will of Mary Sutphen this farm is devised to the defendant in trust for these children, their and each of their heirs and assigns forever. The defendant cannot lay claim to the residue after the infant children have been properly supported, maintained and educated. It is one of the most familiar principles of equity that no one shall take advantage of a fiduciary relation between himself and another, to make gain to himself. When the defendant assumed the appointment of guardian and trustee he assumed also the duties and responsibilities of those offices. (5 *Chit.* 409.) The children have chosen to affirm the authority on which he professed to act, and he will not be allowed now to deny it. A trustee cannot be permitted to purchase trust property. An agent dealing in behalf of his principal, professing to settle and compromise a claim in behalf of his principal, can not take the entire fruits of the negotiation to his own use. (6 *Paige,* 359.) This was held where the declaration of the trust did not appear upon the face of the instrument, but in a case where to fulfil the demands of justice parol evidence was allowed, to prove the intention of the testator. (5 *Barb. S. C. Rep.* 58.)

When the purposes for which an express trust has been created shall have ceased, the estate of the trustees shall also cease. (1 *R. S.* 730, § 67. 2 *Sand. Ch.* 296.)

The purposes of the estate in trust or power in trust in respect to the plaintiff ceased upon her marriage and arriving at the age of twenty-one years. If any interest existed in Mary Sutphen undisposed of, either in remainder or reversion, by her decease the same became united to the beneficial estate of the daughter as heir at law, who is now seised of the same in fee. (4 *Paige,* 404.) And by the 47th section of the revised statutes, ( *Vol.* 1, *p.* 727,) every person who is entitled to the actual possession of lands, and to the receipt of the rents and profits thereof in law or equity, is deemed to have a legal estate therein, commensurate with his beneficial interest in the premises, except in those cases where the estate of the trustee is connected with

Sterricker *v.* Dickinson.

some power of actual disposition or management. The effect of this provision of the revised statutes is to turn all merely nominal or naked estates in trust in real property into legal estates in the persons having the beneficial interest therein. (4 *Paige,* 404.)

It is said by the counsel for the defendants, that the bill, in praying for an account and for partition, is multifarious, and that the relative situation of the parties is such as not to entitle the plaintiff to ask for partition. In the case of *Hosford* v. *Merwin,* (5 *Barb. S. C. Rep.* 54, 62,) there was a prayer to account and for partition, and the defendant was in possession claiming to hold adversely. The court say, this, as a general rule, would be sufficient ground for denying the application; but when the question arises upon an equitable title set up by either of the parties, the reason of the rule fails. The court will not entertain a bill for partition when the legal title is disputed or doubtful, because a court of law is the proper tribunal to determine such questions. But when the questions are such as belong to a court of equity, there can be no reason for suspending the proceedings short of complete justice between the parties. Courts of equity have concurrent jurisdiction with courts of law to decree partition and sales of land. (2 *R. S.* 329, § 79. 1 *Sand. Ch.* 201. 4 *Barb. S. C. Rep.* 229.) Again; if the complainant has been ousted of his possession, or the premises are held adversely, the defendant should set up that defense by plea or answer. (3 *Paige,* 245, 6.) There is no evidence of ouster or adverse holding in this case. Indeed the purchase of the interests of the other heirs is rather a recognition by the defendant of the claim of the plaintiff, to some extent.

It is insisted by the defendant, that he should be allowed his account against Matthew L. Sutphen, and also against Mary Sutphen, which accrued after the death of her husband and previous to her own death; and also should be allowed one-fifth part of the aggregate expense laid out upon the five infant children, irrespective of the amount laid out for the plaintiff.

How much property came into the defendant's hands from Mary Sutphen, besides the farm, does not exactly appear, though it probably was not of much value. I think the farm itself

HARVARD LAW SCHOOL LIBRARY

Sterricker *v.* Dickinson.

should be free of any charge in respect to Mary Sutphen at the time it came into the hands of the defendant. It was intended that the avails should be for the entire benefit of the children. But the trustee or guardian has an equitable right to be allowed the sums actually expended by him in securing the title, and such sums as he may have expended for the support of the infant children respectively, beyond the value of their services. (6 *Paige,* 364.) And I consider the defendant's claims or accounts as to the four children were severally settled with them, as he purchased their shares; and that the only personal account which he is entitled to offset against the plaintiff is his proper charge for her support, maintenance and education, over and above the value of her services.

I have read through the large volume of evidence in this case; and looking at the testimony of James Sutphen, who had the best means of knowledge, together with the testimony of Olive Palmer, Jane Hunt, and Almira Merry, as well as other testimony bearing upon the question, I think the plaintiff ought to be charged at least five shillings a week for three years, which would amount to about $100, saying nothing about her clothes and schooling. From all the testimony in the case I should put the value of the farm at $5222, and the annual rent at $239. I have arrived at this conclusion not without some hesitation, after a careful examination of the testimony; for I would not hastily disturb the report of the learned referee upon questions of fact; and I am well aware that a person who hears the testimony is generally better able to estimate its proper weight and effect than one who reads it on paper. But the authorities to which I am referred by the counsel for the plaintiff do not convince me that I am entirely precluded from correcting the report in these particulars. Instead therefore of $6325, the worth of the farm should be put at $5222, and instead of $250, the annual rent should be $239. According to my computation, after allowing the defendant $100, and the proper commissions, the sum due the plaintiff is $71,03.

Let a decree therefore be entered that the defendant pay the plaintiff $71,03, in twenty days after due service of notice of

this decree, and that partition be made and commissioners be appointed, and the costs accruing hereafter, that is, after entering and giving notice of the decree, be defrayed by the parties according to their respective shares, as provided in the statute on partition, (2 *R. S.* 328, § 72;) that is to say, four-fifths to be paid by the defendant, and one-fifth by the plaintiff.

Let the report, thus modified, be confirmed.

On appeal, the foregoing decision was affirmed at the general term held at Ithaca, in the 6th district, in September, 1851, by Justices Shankland, Mason and Monson.

