In the Matter of the Estate of MARCUS BECKMANN, Deceased.

Surrogate's Court, Kings County, March 10, 1936.

*Rabe, Keller & Davis,* for the petitioners, H. G. William Beckmann and Henry C. Beckmann, executors.

*Frank Stone* [*Abraham Dranoff* of counsel], for Mary Pottberg, legatee.

*O. J. & W. J. Kalt,* for Herman Kedenburg, individually and as executor of Emma Kedenburg, deceased (deceased daughter).

*Charles J. Kennedy,* for Emma Maria Betty Werfelman, daughter of deceased child of decedent (Emma Kedenburg).

WINGATE, S.   Whereas the instant will was executed in 1921, its direction which is the subject of present controversy would seem indicative of the possession by the testator of prophetic vision in forseeing the vicissitudes which have followed the financial debacle of 1929.   The questioned provision reads:

" *Fifth.*   All the rest, residue and remainder of my estate, both real and personal, of which I may die seized or possessed, I give, devise and bequeath to my executors hereinafter named, or any successors that may be appointed, to take possession of and I hereby order and direct such executors, for a more convenient distribution thereof, to sell and convert the same into money as soon as practicable after my decease, such sale or sales to be either public or private and upon such terms and for such prices as to them may seem most advantageous to my estate with full power and authority to my executors to execute good and sufficient deeds of conveyance for the same, and until the sale or conversion of the said property into money, I direct my executors to take entire charge and control of the management of the same and to collect the rents, issues, income and profits therefrom and to pay the necessary expenses in connection therewith, and upon the conver-

sion of the said property into money, I direct my executors to distribute the proceeds thereof, after the payment of the expenses in connection with the care, management and preservation of the said property, among my beloved children in equal shares, the issue of any child having died to take the share which its parent would have taken if living."

The executors have continued to hold the property for purposes of liquidation and have made periodic distribution of the income received therefrom. No one complaints of their actions in this regard. The present controversy concerns the nature of the rights created by the foregoing item of the will in view of the fact that whereas seven children survived the testator, one has since died. The issue is, therefore, squarely presented as to whether the children who survived received vested or contingent interests. In the former alternative, the share of the deceased daughter will form a part of her estate, and in the latter, becomes the potential property of her daughter under the alternative gift to issue.

The court feels indebted to counsel for their brief yet comprehensive memoranda on the issues presented, and especially for the masterly restraint displayed in refraining from the citation of previous adjudications construing the language of other wills. It is only regrettable that one of their number is marred by a consistent violation of rule 235 of the Rules of Civil Practice and of rule XXXIII of this court, which places a considerable additional burden upon the court in following its argument.

The syllogism in favor of a contingent gift is based on two premises, *first*, that the item in question created a trust, and, *second*, that the " divide and pay over " rule governs its interpretation.

Since the duration of the postponement of complete possessory enjoyment of the corpus of the estate is not measured by lives, it is obvious that if a valid trust has been erected, it must fall within the enactment contained in subdivision 2 of section 96 of the Real Property Law, as one " to sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon."

Certain of the parties contend that the questioned provision amounts to no more than a power in trust as defined by sections 137 and 138 of the Real Property Law.

Whereas, in certain aspects, powers in trust resemble true trusts, the outstanding " distinction between express trusts and powers in trust is that in the former the trustee takes the legal title, which does not pass to the trustee of a power." (*McGuire* v. *McGuire*, 201 App. Div. 71, 76. See, also, *Sterricker* v. *Dickinson*, 9 Barb. 516, 519.)

By the language of the will there was an express devise and bequest of the remainder of the estate to the fiduciaries which inevitably vested title in them, irrespective of the nomenclature by which they were designated. They thus became executors with added trust duties attached, within the contemplation of *McAlpine* v. *Potter* (126 N. Y. 285, 289) and similar authorities.

The validity of this trust is not open to serious question. It is clearly a trust " to sell * * * real property for the benefit of * * * legatees." The direction for sale is " absolute and imperative, without discretion, except as to the time and manner of performing the duty imposed," and thus complies with the condition for validity of such a trust pointed out in *Cooke* v. *Platt* (98 N. Y. 35, 38). Authority, pending sale, to collect the rents and profits is expressly given and this supplies the conclusive additional feature, if, indeed, any be needed, for a determination that the arrangement intended was a valid trust under subdivision 2 of section 96 of the Real Property Law. (*Robert* v. *Corning*, 89 N. Y. 225, 236; *Matter of Narwood*, 141 Misc. 199, 200; *Wood* v. *Brown*, 34 N. Y. 337, 340.) The authorities cited on behalf of the contesting legatee, in so far as they are at all in point respecting trusts under subdivision 2 as distinguished from subdivision 3, are not in conflict with the views here expressed.

Consideration of the vested or contingent nature of the gifts is next in order. Were the provision of the present will that upon the completion of the liquidation the proceeds should be divided among the then living children of the testator, *Matter of Narwood* (141 Misc. 199) would be an authority squarely in point. Such, however, is not the language of the present instrument, which directs the executors " to distribute the proceeds * * * among my beloved children, the issue of any child having died to take the share which its parent would have taken if living."

The daughter of testator's daughter whose death postdated his, contends that the " pay and divide " rule is applicable and is conclusive in her favor. This is an overstatement of the effect of a testamentary direction of this type. The " pay and divide " rule is merely one of a number of canons of construction, and whether or not " it is a rule more honored in the breach than in the observance," as was remarked by Chief Judge CULLEN in his dissenting opinion in *Dickerson* v. *Sheehy* (209 N. Y. 592), it is unquestionable that it is no more an authoritative criterion of decision than many other indications of intention upon which courts seize as an ultimate resort when the language of a will leaves the meaning of the testator in doubt. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 583.)

Two other canons of construction are worthy of recollection in this connection. The first is that words of survivorship are usually to be construed as connoting survivorship of the testator. (*Nelson* v. *Russell*, 135 N. Y. 137, 141; *Runyon* v. *Grubb*, 119 App. Div. 17, 19; *Matter of Perlmutter*, 156 Misc. 571, 574; *Matter of Moores*, 155 id. 471, 473, 474, and authorities cited.) The second is that a will ordinarily speaks as of the date of death of the testator. (*Brundage* v. *Brundage*, 60 N. Y. 544, 548; *Matter of Larney*, 148 Misc. 871, 878; *Matter of Schrier*, 147 id. 539, 540; *Matter of Shevlin*, 143 id. 213, 217.)

The application of these two rules, which are, if anything, more generally applied than the divide and pay over rule, would result in a determination that the recipients of his bounty, whom testator had in mind, were those of his children who were living at the time of his death, and that the substitutionary gift to the children of those who had died referred merely to those, if any, who might predecease him.

In the opinion of the court this is a much more probable reflection of the testamentary intent than that the fixation of the rights of his nearest kin should be postponed until some indefinite date in the future when his executors had succeeded in liquidating his estate. As the court had recent occasion to observe in another connection, any inquiry into the state of mind of a given testator at the time of the execution of the will cannot entirely overlook subsequent happenings which have transpired in the natural course of events and the prospective incidence of which appear, from the terms of the will, to have been within his contemplation. (*Matter of Lang*, 158 Misc. 26, 27.)

Here the testator obviously foresaw that the settlement of his estate would prove an extremely protracted operation. As events have demonstrated, it has already consumed more than eight years, and so far as present appearances disclose, the end is at present no nearer than it was at the beginning of that period. Is it probable that the testator intended to postpone any gift to the preferred objects of his bounty until the expiration of half a generation or more and wished to condition those benefits on the chance of survivorship with possibilities of intestacy quite real though admittedly remote? Is it probable that he contemplated a grant of power to his executors which would in effect authorize them wholly to disinherit these favored objects of his bounty?

Rather would it seem, if the " pay and divide " rule is to be deemed applicable, that the exception thereto, noted in *Dougherty* v. *Thompson* (167 N. Y. 472, 486), should govern on the facts here existing, to the effect that " if the postponement is simply for the

\* \* \* convenience of the estate, that indicates that the gift itself is not intended to be postponed, but that it is not presently payable."

In the opinion of the court this is the precise situation here disclosed. It was the intention of the testator that those of his children who were living at the time of his death should share in the remainder of his estate. He was aware of its unliquid character, and in order to assure their receipt of the greatest possible benefit therefrom, he aptly provided for its orderly liquidation. It was theirs from the moment of his death, but to prevent the sacrifice of values and possible family bickerings, he placed the liquidation in the hands of trustees with broad discretionary powers as to the time of sale. The postponement of possessory enjoyment was " simply for the convenience of the estate." The gift was not intended to be postponed; only its time of payment.

It is accordingly determined that the children of the testator who survived him received fully vested interests in the remainder at the time of his death and that the share of any such child whose death antedated the ultimate date of distribution will be payable to his estate.

Enter decree on notice.