In the Matter of the Estate of HENRY L. ARMSTRONG, Deceased.

Surrogate's Court, Westchester County, October 9, 1937.

*Clifford Couch,* for the petitioner, Westchester County National Bank, as trustee.

*Francis C. Dale,* for Emma B. Austin, Sarah J. Perry and G. Frank Barmore.

SHEILS, S. Henry L. Armstrong, the testator, died February 8, 1925. On the 26th day of February, 1925, the last will and testament of Henry L. Armstrong, together with two codicils thereto, was admitted to probate by this court and letters testamentary issued to the Westchester County National Bank.

His will and codicils, so far as they concern this accounting, gave to his executor $25,000 in trust for the use of his wife during her natural life, and upon her death the principal of such trust fund to become a part of his residuary estate, which residuary was bequeathed to his sister Mary E. Barmore, his sister Sarah J. Perry, his niece Mary B. Anderson, his niece Harriet Armstrong, and his niece Emma V. Cummings. Mary E. Barmore's share was provided for as follows: " To my sister, the said Mary E. Barmore, two-eighths (2/8) part of the whole of said rest residue and remainder of my estate."

Prior to the probate of the will and codicils of Henry L. Armstrong, and ten days after his death, on the 18th day of February, 1925, there was executed a most unusual, rare, unique and interesting agreement, which is the principal subject-matter involved in this accounting, and will be called hereinafter for convenience " Exhibit A."

" Exhibit A " was executed and acknowledged by Mary E. Barmore, Sarah J. Perry, Mary B. Anderson, Harriet R. Arm-

strong and Fred A. Armstrong, and will be quoted in so far as it affects or relates to the particular problem and issue presented to this court. Other conditions of the agreement are merely referred to. It was before the court as part of the intermediate accounting proceeding, and is as follows:

" SURROGATE'S COURT,
COUNTY OF WESTCHESTER

In the Matter of the Probate
of the Last Will and Testament
of
    HENRY L. ARMSTRONG,
              Deceased.

" WHEREAS questions have arisen as to the proper interpretation and legal construction of several of the paragraphs and provisions of the last Will and Testament and its Codicils of Henry L. Armstrong, the above named decedent, affecting the rights and interests of Evelyn P. Armstrong the surviving widow of the decedent; and also affecting the rights and interest of Harriet Armstrong the only surviving child of Sela Armstrong, a brother of decedent; and also affecting the rights and interests of all the heirs at law and residuary legatees and devisees severally named in the ' Twentieth ' paragraph of the second Codicil of the said Will, and

" WHEREAS it is the desire of the undersigned the said surviving widow of said decedent, his only heirs at law, and the residuary devisees and legatees named in the Will of the said decedent, before the said Will is offered for probate to among themselves fairly interpret these several questions the provisions of said Will and give legal construction and effect to the same, in the belief that these questions and their legal construction would have been wholly averted had the niece of the testator Emma V. Cummings survived the death of the testator.

" *Now therefore* we do hereby severally agree that it is our belief that had the testator Mr. Armstrong not been precluded by serious and prolonged illness after the year 1923, he would upon the death of the said Emma V. Cummings have published and executed a further codicil to his will.

" We believe that by reason of the additional cost of living by such codicil he would have increased the trust fund created by the ' Third ' paragraph of the second codicil of his Will so that the said ' Third ' paragraph as amended would have read as follows: ' I do give unto my executors the sum of Fifty thousand dollars ($50,000), in trust, for the use of my wife, Evelyn P. Armstrong

during her natural life. Upon the death of my said wife, the principal of such trust fund is to fall into and become a part of the residue of my estate hereinafter provided for.' * * *

" *And Further* it is our belief that the one-eighth part of the whole of the rest, residue and remainder of the estate which the testator the said Henry L. Armstrong did give, devise and bequeath to Emma V. Cummings, which by reason of the death of the said Emma V. Cummings, prior to the death of the testator became a part of the estate of Henry L. Armstrong of which he died intestate, should be paid to Fred A. Armstrong, the only surviving child of his father William Armstrong, a brother of decedent, to the end that he shall receive nearly that share of the estate of the said decedent, which his father would have received, had the said William Armstrong survived the said decedent.

" *And* we do hereby severally agree in consideration of the premises and of the sum of one dollar in hand paid, each to the other the receipt whereof is hereby acknowledged, as follows:

" 1. That the Trust Department of Westchester County National Bank of Peekskill, New York, the executors and trustees named and appointed by the said Henry L. Armstrong in his last Will and Testament upon the said Trust Department of the Westchester County National Bank of Peekskill, New York, qualifying as such executors, be and the said executors, are hereby instructed, directed and empowered by the undersigned to pay to the trust department aforesaid, from the residue estate of the above named decedent, the sum of twenty-five thousand dollars in trust, for the use of Evelyn P. Armstrong the surviving wife of said decedent, during her natural life, which sum of twenty-five thousand ($25,000) dollars is an additional sum of money in like amount bequeathed to the said Trust Department of Westchester County National Bank of Peekskill, New York, in trust, for the use of Evelyn P. Armstrong during her natural life by the 'Third' paragraph of the Second Codicil of the will of the said Henry L. Armstrong, and to invest and keep the same invested and to apply the annual income therefrom to the use and *upon the death of the said Evelyn P. Armstrong the principal sum thereof to be paid by the trustees thereof to the following named persons, their heirs and assigns in proportions,* as follows, to wit:

" To Mary E. Barmore, sister of Henry L. Armstrong, the above named decedent, two-eighths (2/8) part thereof.

" To Sarah J. Perry, sister of Henry L. Armstrong, the above named decedent, one-eighth (1/8) part thereof.

" To Mary B. Anderson, niece of Henry L. Armstrong, the above named decedent, three-eighths (3/8) part thereof.

" To Harriet Armstrong, niece of Henry L. Armstrong, the above named decedent, one-eighth (1/8) part thereof.

" To Fred A. Armstrong, son of William Armstrong, deceased brother of the above-named decedent, one-eighth (1/8) part thereof. * * *

" And we the undersigned for ourselves and our heirs do severally covenant and agree that we will execute such further instruments, if any, as may fully carry out the intentions of this agreement should any be required by the executors and trustees the said Trust Department of the Westchester County National Bank, Peekskill, New York, of the will of the said decedent."

Pursuant to the authorization in this agreement called " Exhibit A," the Westchester County National Bank allocated, set over and apportioned certain securities (and not cash) acquired from decedent's estate in the amount of an additional $25,000 over and above that named in his last will and testament as amended in his second codicil in the amount of $25,000, which made a total of $50,000 as augmented or enlarged, and in its intermediate account filed June 18, 1928, set forth in Schedule " I " the amount of $50,000 as the principal of the funds. The decree settling said intermediate account was entered December 31, 1931. In other words, $25,000 was administered under the terms of the will and codicils and $25,000 by virtue of the terms of " Exhibit A," in which the parties designated themselves as " all of the heirs at law and residuary legatees and devisees severally named in the Twentieth paragraph of the second codicil of the said Will."

The date of testator's will was January 18, 1915; the date of the first codicil September 21, 1916, and the date of the second codicil October 3, 1919. Emma V. Cummings, a niece, predeceased testator, having died on the 28th day of January, 1921, and her residuary bequest would have lapsed except for the provisions of " Exhibit A." Evelyn P. Armstrong, the wife of Henry L. Armstrong, died January, 1936.

Mary E. Barmore survived the testator but subsequently died during July, 1925, and her last will and testament was probated by the surrogate of Putnam county on the 13th day of March, 1936, and letters testamentary thereon were issued to Emma B. Austin and G. Frank Barmore, who are cited herein individually and as executors. As a result of the foregoing facts and circumstances, the problem presented to the court may be summarized as follows:

Mary E. Barmore, as a surviving residuary legatee and devisee, acquired a vested remainder in two-eighths of Henry L. Armstrong's residuary estate and left a will bequeathing and devising her

residuary estate to G. Frank Barmore and Emma B. Austin, her executors. As a party to " Exhibit A " she provided that her residuary interest in two-eighths of Henry L. Armstrong's estate should go to Mary E. Barmore, *her heirs and assigns*. Mary E. Barmore's heirs, in addition to G. Frank Barmore and Emma B. Austin, are Mary B. Anderson and Louis A. Barmore.

The Westchester County National Bank, as accounting trustee, is impartial in this proceeding, and asks the court to determine to whom the distribution on this accounting shall be made so that it may be discharged from responsibility as to all matters embraced in the accounting, and thereby protected in the court's decree.

Mary B. Anderson and Louis A. Barmore's interest in this proceeding depends upon whether or not they share as " heirs and assigns " of Mary E. Barmore under the recitals in " Exhibit A."

The precise question: Should Mary E. Barmore's share be payable to her executors or to her heirs?

The answer to this simple question presents one of the most interesting and yet perplexing of problems. Its answer must be found in the solution of the words " heirs and assigns " in " Exhibit A." It brings into life the rule in *Shelley's* case, and the legal books written about these words would contain tomes. Precedents in the construction and interpretation of these words are so numerous that it means a web of legal entanglement must be unwoven in order to apply them as a guide.

What was this interestingly phrased instrument " Exhibit A? " Was it a contract? If so, was it revocable? Was it an assignment of Mary E. Barmore's share in the estate of Henry L. Armstrong to her heirs? Are her heirs to be regarded as of the date of the instrument (and thus having a vested interest) or as of the date of her death? Did she preclude herself from further disposing of her share by will or assignment? Did she make absolute disposal of her share as a life estate in herself and remainder to her heirs? Applying the rule in *Shelley's* case are the words " heirs and assigns " words of purchase or of limitation? Was it intended to create an estate by descent, thereby excluding heirs who were not in being at her death? If it is contractual does the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) apply? Is there a reversionary interest at all times reserved by Mary E. Barmore?

I am going to dispose of these complications by applying the primary or legal definition of the word " heirs " as manifested by the intention as I view it of Mary E. Barmore at the time that she executed the instrument called " Exhibit A."

The application of the primary definition of the word " heirs " in the light of the intention and purpose of Mary E. Barmore as

discerned from the instrument itself will answer the issues herein. The issue, as presented, resolves itself as follows: Is the additional trust of $25,000 set up in "Exhibit A," and administered by the accounting trustee, an *inter vivos* trust so that the Supreme Court is the proper and only court in which the trustee may render its accounts and be fully discharged from responsibility and thereby protected?

The practical matter which the court is called upon to answer is: Shall the Westchester County National Bank draw its check to the executor of Mary E. Barmore for two-eighths of $25,000, or shall it draw its check to Mary E. Anderson, Emma B. Austin, G. Frank Barmore and Louis A. Barmore to each for the one-fourth of two-eighths (or one-sixteenth) of $25,000?

Because of the variety and complexities of legal axioms and principles involved, it is safer to approach the problem from basic and academic reasoning. First of all, and it must not be lost sight of, the present funds were created from the estate of Henry L. Armstrong and, no matter what disposition is ultimately made, this should be the starting point. With that in mind let us see what Henry L. Armstrong did. He left a life estate to his wife Evelyn P. Armstrong with a two-eighths vested remainder to Mary E. Barmore. So far there is no dispute, and her rights, as vested remainderman, gave her an absolute right of disposal of her share. She could sell it to any one, she could assign it to any one, she could pledge it, and she could dispose of it by will or by trust *inter vivos*. In short, Henry L. Armstrong gave it to her absolutely without restriction of any kind or nature except that she would not come into enjoyment of it until the death of Evelyn P. Armstrong.

Ten days after the death of Henry L. Armstrong the parties to "Exhibit A" sought by that instrument as is shown by its recitals (1) to provide for Evelyn P. Armstrong more adequately because, through his long and protracted illness (as they expressed it), Henry L. Armstrong had overlooked the "additional cost of living," and they wished to correct his inability to have made allowance for it; (2) they wished to interpret for themselves and construe the will so as not to keep the estate in litigation; (3) they wanted to avert the situation created by Emma V. Cummings predeceasing testator and hence placing her share in the residuary estate, thus believing they were carrying out the wishes of the testator in such an unforeseen circumstance. By the agreement they gave her share to Fred A. Armstrong, a nephew and only surviving child of William Armstrong, a brother of decedent; (4) to pay to Evelyn P. Armstrong as a creditor the sum of $10,000, which represented

bonds assigned to her pursuant to an ante-nuptial agreement and used by Henry L. Armstrong for his personal profit; (5) that they submit to the surrogate only one question of construction as to an item of $40,000 and from his decision it was agreed no appeal should be taken. In short, the parties to " Exhibit A " attempted between themselves, as the sole ones involved, to adjust all legal matters arising out of Henry L. Armstrong's will and codicils and to supply any oversight or solution of any problem that was not taken care of by the testator or could not have been foreseen.

With this in mind, I do not believe that any of the parties thereto, who signed that instrument, intended that the words " heirs and assigns " should be given a testamentary import which would preclude them by later instrument or will from disposing of their shares. It was rather in its nature a phrase and use of words to hold each one's individual interest in the event of death so that each one's " heirs and assigns " should receive an interest and not to become a common fund after the death of Evelyn P. Armstrong.

As I previously stated, I feel constrained to imply to Mary E. Barmore's intention the broadest and most embracing definition of the expression " heirs and assigns " for the reason that in the original bequest and devise she herself was not limited or restrained as to the nature of her gift except as to postponement of enjoyment and not as to quality of the absolute gift so vested in her as a remainderman.

In 29 Corpus Juris (at pp. 288 and 289) and in 21 Cyclopedia of Law and Procedure (at pp. 411 and 412) there are practically identical definitions of the word " heir " in its primary and broadest sense. The sole difference between both definitions is as to order and slight variations of phraseology. It is sufficient to quote Corpus Juris, for Cyclopedia of Law and Procedure merely makes the authority cumulative.

" [§ 3] 2. Primary Meaning — a. In General. In its primary sense, ' heir ' means a person who inherits, or may by law inherit; one capable of inheriting; a person whom the law appoints to succeed to his estate, in case the owner dies without disposing of it by will; a person who receives, inherits, or is entitled to succeed to the possession of any property after the death of its owner; a person who succeeds to the estate of a decedent under the statutes of a country; a person who would be entitled to represent a decedent by the law of the country; he who receives a title in succession to a deceased person; he who succeeds by descent to the inheritance of an ancestor; one on whom the law bestows the title or property of another at the death of the latter; one on whom the law casts the estate by descent immediately on the death of the ancestor; one who by statute is capable of inheriting from another, or one

who succeeds to the estate of a deceased; one who on the death of another becomes entitled by operation of law to succeed to the deceased person's estate, as an estate of inheritance; such of the offspring or issue as may by law inherit; the person who succeeds to property on the death of another who is the ancestor."

Applying my previously-expressed view to this broad definition will give force to those parts of the definition which give to Mary E. Barmore the absolute right to designate in her will who her "heirs" shall be, and in this respect I am not taking away from her, by virtue of her execution of "Exhibit A," any rights which she had as a vested remainderman, but continue for her the right of ownership, control and authority over the funds which came to her absolutely and without restriction (except as to the life estate).

Up to this point there apparently seems to be no discord as to the quality of the estate which Mary E. Barmore received from Henry L. Armstrong and citations of authority to support her position as a vested remainderman are too numerous to warrant quotation here. Reference merely will be made to the supporting authorities. (Real Prop. Law, § 40; *Matter of Wells*, 113 N. Y. 396; *Matter of Seaman*, 147 id. 69; *Matter of Baer*, Id. 348; *Matter of Brown*, 154 id. 313; *Clark* v. *Cammann*, 160 id. 315; *Matter of Crane*, 164 id. 71; *Dougherty* v. *Thompson*, 167 id. 472; *Stringer* v. *Young*, 191 id. 157; *Matter of Bump*, 234 id. 60; *Matter of Beckmann*, 158 Misc. 706.)

This opinion and decision could end here were it not for the fact that Emma B. Austin and G. Frank Barmore, as executors of the estate of Mary E. Barmore and concededly two of the "heirs" of Mary E. Barmore, through her attorney, have appeared and have objected to the trustee accounting to this court as to the $25,000 additional fund set up by virtue of "Exhibit A." Their contention through counsel is that "Exhibit A" created an *inter vivos* trust, the accounting as to which should be in the Supreme Court. The attorney's theory is that the executor was not handling a trust of $25,000, as augmented or enlarged to $50,000, but that there were separate and distinct trusts, one testamentary and the other an express *inter vivos* trust. His contention is that the "indicated ultimate dispositions thereof are so different as to inhibit consolidation thereof, and disposal of them as one fund, even though the moneys must inevitably pass as a matter of law to the same ultimate persons as provided in and under the Will and Testament of Henry L. Armstrong, and 'Exhibit A' to the petition herein."

Louis A. Barmore and Mary B. Anderson, the two persons who, as heirs of Mary E. Barmore, would gain by this contention of counsel, although cited in this accounting, have not appeared.

The question now resolves itself into this: Has the Surrogate's Court jurisdiction of the account as to the additional $25,000 fund as set up in " Exhibit A," or should this matter be referred to the Supreme Court as an *inter vivos* trust?

Heretofore I have answered the questions propounded by deciding that the share of Mary E. Barmore should go to her executors and such share is two-eighths of $25,000. Having disposed of that question, there remains the above question of jurisdiction.

At the time of the intermediate accounting proceedings there was filed in this court as part of the papers and proceedings therein a copy of " Exhibit A," the original of which was filed in this court by the Westchester County National Bank as executor and trustee. The gross estate in that intermediate accounting was the sum of $702,878.49. After distribution of practically all of the huge sum there remains as controversial in this accounting the sum of $3,125. " Exhibit A " has subserved its purpose and up to this point has avoided costly litigation involving interpretation and construction, and the parties to it are to be commended for their farsightedness and sound judgment in doing all within their power to prevent the controversies and delay due to litigation, so prevalent and unnecessary in so many matters passing through this court.

This court from time to time has been granted additional powers and jurisdiction by the Legislature rather than curtailment. The policy of the Legislature has been to enlarge the jurisdiction from mere functions of probate and administration, as originally constituted to embrace jurisdiction of incidental and collateral matters the disposition of which is essential to the proper and orderly procedure of estate management, control and accounting.

Section 40 of the Surrogate's Court Act provides:

" General jurisdiction of Surrogate's Court. Each surrogate must hold, within his county, a court, which has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction, as follows:

" To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.

" In addition to and without limitation or restriction on the foregoing powers, each surrogate or Surrogate's Court shall have power, in the cases and in the manner prescribed by statute: * * *

"3. To direct and control the conduct, and settle the accounts, of executors, administrators and testamentary trustees; to remove testamentary trustees, and to appoint a successor in place of a testamentary trustee. * * *

"8. To determine the validity, construction or effect of any disposition of property contained in any will proved in his court, whenever a special proceeding is brought for that purpose, or whenever it is necessary to make such determination as to any will in a proceeding pending before him, or whenever any party to a proceeding for the probate of any will, who is interested thereunder, demands such determination in such proceeding. * * *

"10. To settle, as provided in the Banking Law, the account by a corporate fiduciary of its proceedings in respect of a common trust fund maintained by it pursuant to such law." (Subd. 10 added by Laws of 1937, chap. 687, in effect July 15, 1937.)

Under the legislative grant of authority this court has ample jurisdiction in the premises.

The trustee account will be settled in accordance with this decision. Settle decree on notice.